UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERRICK L. SMITH,

                Plaintiff,

v.                                         Case No. 17-cv-513-pp

SANDRA LA DU-IVES, et al.,

                Defendants.

**DECISION AND ORDER DENYING THE PLAINTIFF'S MOTION TO RECONSIDER ITS ORDER DENYING HIS MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 9), DENYING AS MOOT HIS EXTENSION OF TIME TO SUBMIT HIS TRUST ACCOUNT STATEMENT (DKT. NO. 7), AND REQUIRING PLAINTIFF TO PAY $400 FILING FEE IN TIME FOR THE COURT TO RECEIVE IT BY JUNE 9, 2017**

The plaintiff currently is incarcerated at the Waupun Correctional Institution. On April 10, the court received a complaint, in which the plaintiff alleged that the defendants (staff at the Marathon County Jail) were violating his civil rights in violation of 42 U.S.C. §1983. Dkt. No. 1. That same day, the court received from the plaintiff a motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. The plaintiff had signed these documents on March 20, 2017.

On April 26, 2017, the court denied the plaintiff's motion to proceed without prepaying the filing fee.[1] Dkt. No. 6. The court explained that the

---

[1] On April 28, 2017, the court received the plaintiff's motion asking the court to give him additional time to submit his trust account statement. Dkt. No. 7. Because the court is denying his application to proceed *in forma pauperis*, the

1

plaintiff's lawsuit was subject to the Prisoner Litigation Reform Act (PLRA), which requires that a prisoner who has had three or more cases dismissed as frivolous or malicious or for failure to state a claim to prepay the entire $400 filing fee, unless the prisoner is in imminent danger of serious physical injury. 28 U.S.C. §1915(g). The court concluded that the plaintiff had three strikes, and that he was not in imminent danger of serious physical injury because he had been transferred from the Marathon County Jail to Dodge Correctional Institution before the court received his complaint. Id. The court ordered the plaintiff to pay the $400 filing fee by May 12, 2017. Id.

On May 8, 2017, the court received from the plaintiff a motion for reconsideration of the court's order requiring him to pay the full filing fee. Dkt. No. 9. The crux of the plaintiff's argument is that the court was incorrect to base its decision on whether the plaintiff was in imminent danger at the time the court received his complaint. Dkt. Nos. 10, 11. The plaintiff argues that the court should have based its decision on whether the plaintiff was in imminent danger at the time he *filed* his complaint. Id. (Under the prison mailbox rule, a prisoner's document is deemed filed at the moment the prisoner puts the document in the prison mail system, rather than when the document arrives at the court. Taylor v. Brown, 787 F.3d 851, 859 (7th Cir. 2015)).

While the court agrees that courts generally should make the imminent harm determination as of the time the plaintiff filed the complaint, the court disagrees that the prison mailbox rule should apply in these unusual

---

court no longer needs the plaintiff's trust account statement. Accordingly, the court will deny this motion as moot.

circumstances. Here, the plaintiff was transferred from a county jail to a state institution between the time he filed his complaint and the time the court received it. By the time the court received the complaint, the plaintiff no longer was in imminent danger from the defendants at the Marathon County Jail, because he was no longer there.

"By using the term imminent, Congress indicated that it wanted to include a safety valve for the three strikes rule to prevent impending harms . . . ." Knox v. Benefield, Case No. 07-cv-795, 2008 WL 3992692, at *1 (S.D. Ill. Aug. 21, 2008) (quoting Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3rd Cir. 2001)). In other words, while the overarching goal of the PLRA is to prevent prisoners from abusing the judicial system, Congress wanted to ensure that even those prisoners who had abused the system in the past could access the court when they were in danger of a "real and proximate" threat.

Here, the alleged threat to the plaintiff was gone by the time the court received the complaint. While the plaintiff tries to argue that he still suffers lingering effects from the alleged misconduct, that fact is irrelevant to whether the threat is likely to continue. The court concluded there was no threat to the plaintiff because none of the defendants had any access to the plaintiff by the time the court received his complaint. That has not changed.

That, however, does not end the court's inquiry. The plaintiff has brought to the court's attention the fact that he has three pending criminal cases in Marathon County (Case Nos. 17CF148, 16CF1207, and 14CF101, all charges described as "Battery by Prisoners"). Dkt. No. 9 at 2. The plaintiff argues that,

3

given these pending cases, he is certain to have to return to the Marathon County Jail in order to attend hearings and/or trials in the Marathon County Circuit Court. Dkt. No. 9 at 2. In fact, according to the dockets for these cases, there are status conferences set in each of them on June 6, 2017. See https://wcca.wicourts.gov (last visited May 10, 2017).

It is possible that the plaintiff will have to return to the Marathon County Jail. Therefore, the court must go beyond its initial finding that the plaintiff has suffered only past harm that cannot recur, and must consider whether his allegations show that he will be in imminent danger of serious physical injury should he return to the Marathon County Jail. The court finds that he will not.

Many of the plaintiff's allegations focus on the Jail staff's confiscation of his legal materials, their allegedly unfair discipline, and the Jail management's refusal to respond to his many inmate complaints. See, e.g., dkt. no. 3, ¶¶3, 4, 5, 12, 13, 14, 20, 25, 27 and 32. The plaintiff does not alleged that he would face imminent danger of serious *physical* harm should he return to the Jail. In the complaint, the plaintiff raises only two categories of allegations that could possibly lead the court to such a conclusion: 1) that officers at the Jail are creating an environment that encourages inmates to attack and harass the plaintiff; and 2) that medical staff at the Jail refuse to treat his serious medical needs. The court will discuss each in turn.

First, the plaintiff alleges in his declaration that "jail staff is continuing to develop and foster[] a hostile environment against him by antagonizing or rewarding inmates to attack him." Dkt. No. 3 at ¶34. In support of this

4

allegation, the plaintiff describes situations where inmates attacked him, but only he was disciplined. See, e.g., id. at ¶¶9, 37. The plaintiff is suggesting that because he was disciplined for altercations with other inmates, while the other inmates were not,[2] the jail staff must have been encouraging other inmates to attack him. The court will not make the leap of logic that the plaintiff's theory requires.

The court has had the opportunity to review many of the plaintiff's previous lawsuits (against different officials at other institutions)[3], and a recurring theme he raises is that jail and/or prison officials are conspiring to cause him harm, often by turning a blind eye to the threat posed by other inmates.

The Seventh Circuit Court of Appeals has held that a district court is entitled to draw upon its familiarity with a plaintiff's prior meritless litigation, and that, "when making the determination of plausibility, a court may rely upon judicial experience and common sense." Walton v. Walker, 364 Fed.Appx. 256, 258 (7th Cir. 2010). Here, in light of *all* the information before the court, the court concludes that the plaintiff's conclusory allegations that Marathon County Jail officials are encouraging other inmates to attack him are not

---

[2] The plaintiff has provided no evidence supporting his allegation that he was disciplined and the other inmates were not.
[3] See Case Nos. 12-cv-633, 12-cv-741, 12-cv-742, 12-cv-743, 12-cv-952, 12-cv-953, 12-cv-954, 13-cv-387, 13-cv-591, 13-cv-644, 13-cv-645, 13-cv-646, 13-cv-647, 13-cv-658, 13-cv-670, 13-cv-671 in the Western District of Wisconsin and Case Nos. 15-cv-27, 15-cv-20, and 16-cv-84 in the Eastern District of Wisconsin.

plausible. These allegations cannot support a finding that the plaintiff would be in imminent danger of serious physical harm should he return to the Jail.

Next, the plaintiff makes numerous allegations about the deficient medical care he received while at the Jail. His primary complaint is about the medical staff's failure to provide him with the means to shave. Dkt. No. 3 at ¶10. He states that if he doesn't shave, he develops an itchy rash, and his scratching often breaks the skin, which may result in him contracting impetigo, a bacterial infection. Id.; http://www.webmd.com/skin-problems-and-treatments/tc/impetigo-overview#1 (last visited May 11, 2017). He also makes vague complaints about headaches, heart pains, stomach aches, back pain, numbness in his feet, knee and wrist pain, and a degenerative bone condition. Dkt. No. 3 at ¶19, 42-68.

None of these allegations demonstrate that the plaintiff would be in immediate danger of serious physical injury should he return to the Jail. The Department of Corrections is now in charge of his medical care. The plaintiff explains that he was at Waupun before he was transferred to the Jail and that "he was being treated medically for some of his serious medical conditions at that prison before being released." Id. at ¶41. There every reason to conclude that now that he is back at Waupun, the DOC is addressing his medical needs. If the plaintiff is transferred back to the Jail for a hearing in the Marathon County Circuit Court, it likely would be for only a brief time, and then he would return to Waupun.

In addition, although the plaintiff states that none of his requests for help were addressed by Jail staff, he also states that on February 3, 2017, he took some medication, which was given to him by a Jail nurse. Id. at ¶25. The plaintiff must have received *some* treatment at the Jail, although it may not have been the treatment he wanted.

In short, the plaintiff's allegations regarding his many medical needs are "highly conclusory" and "impossibly vague." See Smith v. Gleason, *et al.,* Nos. 12-cv-633, 12-cv-741, 12-cv-742, 12-cv-743, 12-cv-952, 12-cv-953, 12-cv-954, 13-cv-387, 13-cv-591, 13-cv-644, 13-cv-645, 13-cv-646, 13-cv-647, 13-cv-658, 13-cv-670, 13-cv-671, 2013 WL 6238488, at *8 (W.D. Wis. Nov. 27, 2013); Smith v. Pawlyk, Case No. 15-cv-200, Dkt. No. 5 (E.D. Wis. March 2, 2015). Jail staff is no longer responsible for determining what medical treatment the plaintiff requires; they need only continue whatever course of treatment the DOC determines to be necessary. Nothing in the plaintiff's complaint or declaration implies that medical staff at the Jail will be unwilling to do that.

The court finds that the plaintiff has failed to show that he would be in imminent danger of serious physical injury if he returned to the Jail in order to attend a hearing or trial. The court will deny the plaintiff's motion for reconsideration. The court will give the plaintiff additional time to pay the $400 filing fee.

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 9. The court **DENIES AS MOOT** the plaintiff's motion for an extension of time to submit his trust account statement. Dkt. No. 7.

7

The court **ORDERS** that the plaintiff must pay the $400 filing fee in this case in time for the court to receive it by the end of the day on **June 9, 2017**. If the court does not receive the full filing fee by the end of the day on June 9, 2017, the court will dismiss this case without prejudice, and without further notice or hearing.

Dated in Milwaukee, Wisconsin this 22nd day of May, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge